# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 16-212V
Filed:  August 10, 2021

```
*  *  *  *  *  *  *  *  *  *  *  *  *
MICHAEL A. HALCROW,            *        UNPUBLISHED
                               *
        Petitioner,            *
                               *
v.                             *        Attorneys' Fees and Costs
                               *
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *
                               *
        Respondent.            *
*  *  *  *  *  *  *  *  *  *  *  *  *
```

*Kelly D. Burdette*, Burdette Law, PLLC, North Bend, WA, for petitioner.
*Alexis B. Babcock*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On February 2, 2016, Michael A. Halcrow ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] Petitioner alleged that he suffered an exacerbation of his pre-existing multiple sclerosis after receiving an influenza vaccination on October 15, 2014. *See* Petition, ECF No. 1. On June 3, 2020, the parties filed a stipulation, which the undersigned adopted as her decision awarding compensation on the same day. ECF No. 76.

On July 14, 2020, petitioner filed an application for final attorneys' fees and costs. ECF No. 81 ("Fees App."). Petitioner requests total attorneys' fees and costs in the amount of $79,395.25 (representing $34,052.50 in attorneys' fees and $45,342.75 in costs). Fees App. at 2.

---

[1] The undersigned intends to post this Decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755.

Pursuant to General Order No. 9, petitioner warrants that he has not personally incurred any costs in pursuit of this litigation. Fees App. Ex. 4. Respondent responded to the motion on July 15, 2020, stating "Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case" and requesting that the undersigned "exercise her discretion and determine a reasonable award for attorneys' fees and costs." Response at 2-3, ECF No. 82. Petitioner did not file a reply thereafter.[3]

This matter is now ripe for consideration.

## I. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1). Here, because petitioner was awarded compensation pursuant to a stipulation, he is entitled to a final award of reasonable attorneys' fees and costs.

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## II. Discussion

---

[3] On October 27, 2020, the undersigned issued an order informing petitioner that several pages of documentation supporting expert costs were illegible and ordering their re-filing in a legible format. After an extension for time and a missed deadline, petitioner filed an updated version of the documentation on February 10, 2021. Upon review, the undersigned noted that issues persisted (including some documentation not indicating how an expert spent time and other documentation which was unclear as to whether a retainer fee had been applied to the final bill) and ordered petitioner to correct these issues. Following another missed deadline without any motion for extension, petitioner filed a status report on August 2, 2021, indicating that he would not be able to acquire more responsive documentation and asking the undersigned to rule on the motion on the basis of the information presently before the Court. (ECF No. 89).

## A.      Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Petitioner requests the following hourly rates for his attorneys: for Mr. D. Lee Burdette, $400.00 per hour for all work performed from 2016-2020, and for Ms. Kelly Burdette, $200.00 per hour for work performed from 2016-2017, and $275.00 per hour for work performed from 2018-2020. Fees App. at 2. These rates are consistent with what counsel has previously been awarded for their Vaccine Program work, and the undersigned finds them to be reasonable herein.

## B.      Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at \*9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at \*26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08–756V,

---

[4] The 2015-2020 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14–1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728–29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

The overall hours spent on this matter appear to be reasonable. The undersigned has reviewed the billing entries and finds that the billing entries adequately describe the work done on the case and the amount of time spent on that work. None of the entries appear objectionable, nor has respondent identified any entries as objectionable. Accordingly, petitioner is entitled to a final award of attorneys' fees in the amount of $34,052.50.

## C.   Reasonable Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $45,342.75 in costs. Most of this amount is for the work of petitioner's experts, Dr. Daniel Kantor and Dr. Paul Antony, with the remainder attributable to acquiring medical records and postage. Fees App. Ex. 2 at 18-19. Upon review, the undersigned notes that there are several issues with the billing of the experts which necessitate a reduction.

The undersigned will first address the costs attributable to Dr. Kantor, petitioner's neurologist. Petitioner requests reimbursement for $1,500.00 paid to Dr. Kantor as a retainer. Fees App. Ex. 3 at 13. However, in reviewing Dr. Kantor's subsequent billing invoices, it does not appear this amount was ever offset from the final amounts reflected in the invoices. When the undersigned ordered petitioner to file documentation which might show how the retainer was applied to later work, petitioner failed to do so. Accordingly, in order to prevent a duplicative reimbursement of this amount, the final award of costs shall be reduced by $1,500.00.

Dr. Kantor's hourly rate must also be reduced. The invoices submitted reflect Dr. Kantor billed at $1,000.00 per hour. However, such a high rate has never been endorsed by the special masters in the Vaccine Program. In the undersigned's experience, a well-credentialed neurologist with significant prior Vaccine Program experience would be compensated at $500.00 per hour. However, the undersigned is not aware of any prior Vaccine Program experience for Dr. Kantor and petitioner has not provided any information indicating Dr. Kantor has prior Vaccine Program experience. Therefore, in the undersigned's experience and based upon the work product produced by Dr. Kantor on the record, a reasonable rate for his work is $450.00 per hour. Application of this rate results in a reduction of $10,587.50.

Turning next to the costs associated with Dr. Antony, the undersigned has noted two issues. First, Dr. Antony has billed his time at $500.00 per hour. While such a rate would be reasonable for an immunologist with extensive Vaccine Program experience, the undersigned was not able to

verify whether Dr. Antony has prior Vaccine Program experience and petitioner has provided no information indicating that he does. Thus, a reasonable hourly rate for Dr. Antony's work in this case is $450.00 per hour. Application of this rate to the hours billed by Dr. Antony results in a reduction of $1,826.00.

Second, two of the invoices submitted, in the amounts of $8,391.62 and $1,125.00 are essentially illegible. Fees App. Ex. 3 at 26-27. Although they resemble other billing invoices provided by Dr. Antony, the text is so small and blurry as to render them completely illegible, making it impossible for the undersigned to determine their reasonableness. The undersigned noted this issue in her March 31, 2021 order, but petitioner was unable to file readable invoices.[5] Accordingly, the undersigned will reduce the amount requested for these invoices by 50% to account for the issue of them being illegible, resulting in a reduction of $4,282.43.[6]

Finally, the undersigned finds it necessary to reduce the amount incurred by petitioner in utilizing an expert finder service to secure the services of Dr. Kantor and Dr. Antony. The submitted invoices reflect counsel paid The Expert Institute $2,000.00 as a referral fee for Dr. Kantor and $2,500.00 as a referral fee for Dr. Antony. Fees App. Ex. 3 at 8, 11. However, the undersigned questions whether such expenses were necessary in the first place. Neurologists and immunologists are frequently retained as experts in Vaccine Program cases, and while an expert referral service might be necessary to obtain an expert in a more niche field of medicine, the undersigned does not find it to be reasonable in the instant case. If counsel did not have any prior working relationships with experts in neurology and immunology from their prior Vaccine Program experience, a more practical solution would have been to reach out to their colleagues at the Vaccine Injured Petitioners Bar Association to inquire if other attorneys could recommend a medical expert with the requisite experience given the facts of the instant case. The undersigned shall reimburse 25% of the incurred costs as a courtesy, but counsel is advised that in the future unnecessarily incurred costs will not be reimbursed. This results in a reduction of $3,375.00.

Accordingly, petitioner is awarded final attorneys' costs in the amount of $23,771.82.

### III. Conclusion

In accordance with the foregoing, petitioner's motion for attorneys' fees and costs is **GRANTED**. The undersigned hereby awards **a lump sum of $57,824.32, representing reimbursement for petitioner's attorneys' fees and costs, in the form of a check payable jointly to petitioner and Ms. Kelly Burdette.**

---

[5] Petitioner instead filed an interoffice document recording the check as proof of one cost and a photocopy of the actual check to prove the other. Supplement (ECF No. 87) at 24, 30. However, mere documentation of a check is not sufficient documentation to prove expert costs because it does not permit the undersigned to assess the reasonableness of the work performed.

[6] This reduction accounts for the illegibility of the billing records. The undersigned likely would have declined to reimburse any of this amount had the records not been identifiable as invoices from Dr. Antony for work product which was filed into the record of the case. Counsel is advised to take care in the future to ensure that all submitted documentation is legible.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[7]

**IT IS SO ORDERED.**

        **<u>s/Mindy Michaels Roth</u>**
        Mindy Michaels Roth
        Special Master

---

[7] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).